IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| TEXAS STATE LULAC; VOTO LATINO, *Plaintiff,* § § § | |
| v. § | Civil No. 1:21-CV-00546-LY |
| § BRUCE ELFANT, in his official capacity as the Travis County Tax Assessor-Collector, JACQUELYN CALLANEN, in her official capacity as the Bexar County Elections Administrator, ISABEL LONGORIA, in her official capacity as the Harris County Elections Administrator, YVONNE RAMÓN, in her official capacity as the Hidalgo County Elections Administrator, MICHAEL SCARPELLO, in his official capacity as the Dallas County Elections Administrator, LISA WISE, in her official capacity as the El Paso County Elections Administrator, *Defendants.* | |

**PARTIALLY OPPOSED MOTION TO INTERVENE AS DEFENDANTS BY MEDINA COUNTY ELECTIONS ADMINISTRATOR LUPE C. TORRES, IN HER OFFICIAL CAPACITY, AND REAL COUNTY TAX ASSESSOR-COLLECTOR TERRIE PENDLEY, IN HER OFFICIAL CAPACITY**

TO THE HONORABLE LEE YEAKEL:

Intervenor-Defendants Lupe C. Torres, in her official capacity as the Medina County Elections Administrator, and Terrie Pendley, in her official capacity as the Real County Tax Assessor-Collector, (together "the Applicants") move to intervene into the above referenced matter to protect their significant interests at stake in this litigation related to their official duties involving voter registration pursuant to Federal Rule of Civil Procedure 24.

## I.   EXECUTIVE SUMMARY

Plaintiffs' challenge the constitutionality of Senate Bill 1111 ("SB 1111") enacted by the Texas Legislature during 87th legislative session and signed into law by Governor Greg Abbott on June 16, 2021.[1] SB 1111 relates to the residence address of a voter for purposes of a response to a confirmation notice sent by a voter registrar.

Applicants seek to intervene in the action in order to protect their important and unique interests as election officials responsible for voter registrations in their respective rural counties. Applicants are charged with administering and implementing SB 1111 as voter registrars for the rural Texas counties of Medina and Real. The current named Defendants in this case are election administrators of six of the eight largest counties in Texas, with the smallest El Paso County ranking as the eighth largest county in Texas. Applicants are the voter registrars for the sixty-fifth and 218th largest counties in Texas. Given the vast size difference between the current named Defendants and the Applicants, Applicants seek to intervene to protect their rural interests in maintaining and administering their voter rolls.

Applicants satisfy the requirement for intervention as of right in this case under Federal Rule of Civil Procedure 24(a) because of this interest in the rights at issue in this action. In the alternative, Applicants seek permissive intervention pursuant to Federal Rule of Civil Procedure 24(b)(2) as Applicants are state officials responsible for administering the challenged statute.

## II.   APPLICANTS

Applicant Lupe C. Torres seeks to intervene in this action in her official capacity as the Election Administrator for Medina County, Texas. As a part of her duties as Elections

---

[1] Available at: https://capitol.texas.gov/BillLookup/History.aspx?LegSess=87R&Bill=SB1111#vote136

Administrator, Ms. Torres serves as the voter registrar for Medina County. *See* Tex. Elec. Code § 12.001. Ms. Torres is primarily responsible for the implementation of the provisions of SB 1111 in Medina County, Texas.

Applicant Terrie Pendley seeks to intervene in this action in her official capacity as the Tax Assessor-Collector for Real County, Texas. As part of her duties as Tax Assessor-Collector, Ms. Pendley serves as the voter registrar for Real County. *See* Tex. Elec. Code § 12.001. Ms. Pendley is primarily responsible for the implementation of the provisions of SB 1111 in Real County, Texas.

### III.   STATEMENT OF FACTS

Senate Bill 1111 was enacted this year during the 87th Session of the Texas Legislature. The purpose of the bill was to ensure that voters register at a physical address to ensure that the voter is voting in the proper precinct and is allowed to vote in the appropriate elections. As described in SB 1111's Bill Analysis:

> "During a post-registration voter confirmation process, this bill provides that the voter's residence address for purposes of voter registration must meet the statutory residence requirements, which explicitly require the voter's current inhabitance, and explicitly excludes commercial post office boxes.
>
> For voters with unusual circumstances, such as rural residents, full-time college students, and members of the military, the bill provides safeguards to ensure enfranchisement."[2]

SB 1111 makes sense especially in rural counties where post office boxes are located in only a few locations, yet a voter may reside in another precinct anywhere in the county or even in an adjacent county. This especially matters in intra-county elections such as for county

---

[2]   *See* SB 1111 Bill Analysis available at: https://capitol.texas.gov/tlodocs/87R/analysis/pdf/SB01111F.pdf#navpanes=0

commissioner, justice of the peace, or constable where a voter living in an unincorporated area of the county but registering to vote at a post office box in an incorporated area would then be registered to vote other than where that voter actually resided. For example, a resident of Uvalde County living near Garner State Park may keep a post office box at the closest location in Rio Frio in Real County. Absent SB 1111, that person may claim the post office box address to vote in Real County, instead of Uvalde where the person lives. Or, a Medina County voter living west of State Highway 173 near the county line with Bandera located in in Medina County Precinct 1 could easily maintain a post office box at the nearest location in Hondo, TX, which is in Medina County Precinct 3.

Plaintiffs have sued election officials in six of the eight largest counties in Texas claiming that SB 1111 is unconstitutional under the First and Sixteenth Amendments. Applicants administer elections in much smaller counties than the current Defendants. Medina County, the sixty-fifth largest Texas county, has 50,057 residents, and Real County, the 218th largest county, has just 3,408 residents. The mechanics of voter registration in rural areas such as where Applicants discharge their duties are completely different than in the urban metroplexes served by the current Defendants.

The Texas Elections Code recognizes the differences between large counties and small counties. For example, the act of counting ballots is also different for counties with a population greater than 100,000. Tex. Admin. Code § 81.36. Early polling places are mandated for counties with over 400,000 people but not for smaller counties. Tex. Elec. Code § 85.062. These are examples of state law treating counties different by population and reinforces the need for Applicant's small counties to have their interests heard. Yet, all Texas counties are subject to the requirements of SB 1111 once it becomes effective on September 1, 2021.

## IV. ARGUMENTS AND AUTHORITIES

### A. APPLICANTS SATISFY THE REQUIREMENTS FOR INTERVENTION AS OF RIGHT

On timely motion, the court must permit anyone to intervene who: "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a). In applying this standard, courts construe Rule 24 liberally, and doubts are "resolved in favor of the proposed intervenor." *In re Lease Oil Antirust Litigation*, 570 F.3d 244, 248 (5th Cir. 2009). Generally, federal courts will "allow intervention where no one would be hurt and the greater justice could be attained." *Heaton v. Monogram Credit Card Bank of Georgia*, 297 F.3d 416, 422 (5th Cir. 2002).

To achieve these ends, the Fifth Circuit has developed the following four-factor test to determine when intervention as of right is appropriate:

> (1) the applicant must file a timely application; (2) the applicant must claim an interest in the subject matter of the action; (3) the applicant must show that disposition of the action may impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by existing parties to the litigation.

*Heaton*, 297 F.3d at 42.

As explained below, Applicants satisfy these four factors.

#### 1. Applicants' Motion is Timely

Applicants have filed their intervention motion before the current Defendants have answered this lawsuit. Timeliness of intervention depends on a "review of all the circumstances." *Trans Chem. Ltd. v. China Nat'l Mach. Imp. & Exp. Corp.*, 332 F.3d 815, 822 (5th Cir. 2003). Nonetheless, the Fifth Circuit has identified at least four factors that it will consider to determine

timeliness: (1) the length of time the intervenor knew or should have known of his interest in the case; (2) prejudice to the existing parties resulting from the intervenor's failure to apply for intervention sooner; (3) prejudice to the intervenor if his application for intervention is denied; and (4) the existence of unusual circumstances. *Id.*

Although these factors give structure to the timeliness analysis, the Fifth Circuit has repeatedly held that they do not constitute a rigid formula. *Ross v. Marshall*, 426 F.3d 745, 754 (5th Cir. 2005). The "timeliness analysis remains 'contextual,'" and should not be used as a "tool of retribution to punish the tardy would-be intervenor," but rather should "serve as a guard against prejudicing the original parties by the failure to apply sooner." *Id.* Here, while there are no unusual circumstances, each of three remaining factors weigh in favor of allowing Applicants to intervene.

    a.    <u>There was no significant gap in time between Applicants' knowledge of their interest in the litigation and the filing of the motion to intervene.</u>

When the intervention is filed within days of the Original Complaint, there is a strong presumption of timeliness. *See, e.g., Stallworth v. Monsanto Co.*, 558 F.2d 257 (5th Cir. 1977) (movants discharged their duty to act quickly by filing petition less than one month after district court entered consent order); *Association of Professional Flight Attendants v. Gibbs*, 804 F.2d 318 (5th Cir. 1986) (five-month lapse found not unreasonable). "Most [Fifth Circuit] case law rejecting motions for intervention as untimely concern motions filed after judgment was entered in the litigation." *Edwards v. City of Houston*, 78 F.3d 983, 1001 (5th Cir. 1996); *see also, John Doe No. I v. Glickman*, 256 F.3d 371, 377 (5th Cir. 2001) ("The Institute filed its motion to intervene ... before trial and any final judgment. We cannot say that this delay is unreasonable."). Here, Applicants filed this motion to intervene before the existing Defendants even filed their original answers or otherwise responded to the complaint. This gap between knowledge of interest in the

litigation and filing of the motion to intervene is well within the norm for the Fifth Circuit. Applicants' motion is therefore timely.

        b.    <u>The time of Applicants' intervention will not prejudice existing parties.</u>

The second timeliness factor "weighs the prejudice to other parties caused by the delay in seeking intervention." *In re Lease Oil Antitrust Litigation*, 570 F.3d at 248. "Any potential prejudice caused by the intervention itself is irrelevant, because it would have occurred regardless of whether the intervention was timely." *Id*. Here, the timing of Applicants' intervention will not prejudice any of the parties. To date, Plaintiffs have filed the only pleading in this case. Therefore, granting Applicants' motion at this time will not result in significant disruption or delay. Nor will it undermine any of the progress in the litigation to date—there have not been any motions or other matters ruled on by this Court nor has a schedule been set. Accordingly, granting intervention is proper.

        c.    <u>Denying intervention would prejudice Applicants.</u>

The standard for determining prejudice is low. *See, Sierra Club v. Espy*, 18 F.3d 1202, 1207 (5th Cir. 1994). In *Sierra Club*, the court found that the Texas Forest Association (who purchases timber from national forests) would be prejudiced if not allowed to intervene in a lawsuit determining the validity of National Forest Service regulations regarding the harvesting of timber. *Id*. The court found that the prejudice remained, despite the fact that the TFA was involved in other litigation on the issue. *Id*. As the court explained, even a temporary' restriction on rights is sufficient to constitute prejudice. *Id*. (The Movants "have the prospect of injury if the Forest Service cannot deliver constant volumes of timber.").

SB 1111 concerns the accuracy of voter rolls. And Applicants are tasked with maintaining voter rolls in their role as voter registrars for Medina County and Real County. Applicants have

an interest in defending the constitutionality of SB 1111. Furthermore, denying Applicants' intervention motion will cause prejudice because the outcome of this lawsuit may cause confusion in the administration of elections in the 2022 election cycle should Plaintiffs prevail. Applicants both administer elections for their respective counties within the Western District of Texas. Yet, an unfavorable judgment against the named defendants could be binding as precedent within the Western District, but Applicants will not be able to address the consequence of Plaintiffs claims on their counties unless allowed to intervene. The Texas Legislature enacted SB 1111 to apply to the voter registration process for all counties, and it will cause chaos in the administration of the elections process if only certain county election administrators are allowed to be cherry-picked as named Defendants by Plaintiffs.

2.  *Applicants have an interest in the subject matter of the action.*

The interest test is "primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Sierra Club v. Espy*, 18 F.3d 1202, 1207 (5th Cir. 1994). To meet the interest requirement of Rule 24, all that is required "is an interest in property or other rights that are at issue" in the underlying litigation. *Diaz v. Southern Drilling Corp.*, 427 F.2d 1118, 1124 (5th Cir. 1970). An applicant's interest is obvious when he asserts that the subject matter of the suit will affect his ability to use his private property. *Id.* ("Interests in property are the most elementary type of right that Rule 24(a) is designed to protect.").

Applicants are responsible for administering and maintaining voter rolls and will be responsible for implementing SB 1111. They have considerable interest in voter registration procedures and policy, especially as it is arguably likely that Applicants will be bound by a determination of this Court as to the constitutionality of SB 1111.

3.   *Applicants' interest will be impaired if they are not allowed to intervene.*

To meet the third requirement, "the applicant must be so situated that disposition of the action may, as a practical matter, impair or impede, his ability to protect [his] interest." *Edwards v. City of Houston*, 37 F.3d 1097, 1107 (5th Cir. 1994). This is a low bar. For example, even the mere threat of "economic injury from the outcome of litigation" standing alone is sufficient. *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996 (10th Cir. 2009).

In *Sierra Club v. Espy*, 18 F.3d at 1207, the court held that the association's interest would be impaired if not allowed to intervene because, as a practical matter, the interpretation of the regulation would affect the association's ability to collect timber.

Here, the issue in the litigation directly effects Applicants. Applicants are charged with voter registration in their counties and the administration of SB 1111 when effective. The outcome of this litigation will affect the way Applicants register voters for future elections and Applicants have an interest in maintaining the constitutionality of SB 1111.

4.   *Applicants' interests are not adequately represented by the existing parties.*

The potential intervener has the burden of proving that the existing parties do not adequately represent her interest. *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n. 10 (1972). This burden, however, is "minimal." *Id.* The potential intervener need only show that the representation *may be* inadequate. *Id.*

In evaluating adequacy of representation, the court looks to three factors: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervener's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervener would offer any necessary elements to the proceeding that other

9

parties would neglect." *Wolfsen Land & Cattle Co. v. Pac. Coast Fed'n of Fishermen's Associations*, 695 F.3d 1310, 1316 (Fed. Cir. 2012).

Here, although Applicants and Defendants are all county officials responsible for voter registrations, there are differences between the urban group of Defendants and Applicants. Defendants are the voter registrars in six of the eight largest counties in Texas, with the smallest county, El Paso, county having 836,062 residents.[3] Medina County, by contrast, ranks sixty-fifth among the Texas counties with a mere 50,057 residents.[4] Similarly, Real County ranks 218th with 3,408 residents. The larger county Defendants maintain much larger budgets and staffs to administer voter registration. As such, the burdens imposed by voter registration guidelines are borne differently by large and small counties. An incorrectly registered voter in Real County is much more likely to decide an election than an incorrectly registered voter in Harris County because the single voter in Real is a much larger percentage of the electorate. While all counties desire accurate voter rolls, the smaller Applicant counties administer have a unique interest in maintaining their accuracy.

**B.   IN THE ALTERNATIVE, PERMISSIVE INTERVENTION IS WARRANTED**

Permissive intervention is authorized by a government officer or agency when the "party's claim or defense is based on a statute or executive order administered by the officer or agency." Fed. R. Civ. P. 24(b)(2)(A). The rule requires a proposed governmental intervenor to: (1) be a federal or state governmental officer or agency; (2) administer the statute, executive order, or regulation at issue; (3) file a timely motion; and (4) not cause undue delay or prejudice to the

---

[3]   *See* https://www.texas-demographics.com/counties_by_population (last accessed 8/9/21).
[4]   *Id.*

original parties' rights, if allowed to intervene. *Perez v. Perry*, 2013 U.S. Dist. LEXIS 137345, at *19 (W.D. Tex. Sep. 24, 2013).

There is no doubt that Applicants meet the first two elements. As the Texas Supreme Court has stated:

> "Statewide Texas elections are administered by county officials. Texas has 254 counties, more than any other state. They range in population from 134 people to over 4 million and in size from 149 square miles to over 6,000. Texas counties are 'legal subdivisions of the State', 'subordinate and derivative branch[es] of state government' that 'represent no sovereignty distinct from the state and possess only such powers and privileges as have been expressly or impliedly conferred upon them.' Before a county official can take "any action," that action's 'legal basis . . . must be grounded ultimately in the constitution or statutes.'"

*State v. Hollins*, 620 S.W.3d 400, 403-04 (Tex. 2020) (internal citations omitted). As discussed above, Applicants' motion is timely and granting the motion will not cause delay or prejudice to the original party's rights.

Therefore, Applicants should be allowed to intervene in this case under the permissive intervention portion of Rule 24.

## V.  PRAYER AND CONCLUSION

THEREFORE, Applicants respectfully request the Court grant their motion to intervene as Intervenor-Defendants. Furthermore, Applicants request the Court accept their Answer attached as Exhibit A and order the Clerk to file.

Respectfully submitted,

/s/Robert Henneke
ROBERT HENNEKE
Texas Bar No. 24046058
rhenneke@texaspolicy.com
CHAD ENNIS
Texas Bar No. 24045834
cennis@texaspolicy.com

CHANCE WELDON  
Texas Bar No. 24076767  
cweldon@texaspolicy.com  
TEXAS PUBLIC POLICY FOUNDATION  
901 Congress Avenue  
Austin, Texas 78701  
Telephone:   (512) 472-2700  
Facsimile:    (512) 472-2728  

*Attorneys for Intervenor-Defendants*

## CERTIFICATE OF CONFERENCE

I certify that counsel for Applicants emailed counsel of record for Plaintiffs and Defendants to confer on the substance of Applicants' motion. Plaintiffs oppose Applicants' Motion. Counsel for the El Paso County Elections Administrator replied that she did not take any position on Applicants' Motion. Applicants did not receive responses from the other Defendants.

/s/Robert Henneke  
ROBERT HENNEKE

## CERTIFICATE OF SERVICE

I certify that the foregoing document was filed via hand delivery on August 11, 2021, with the Clerk of the Court for the U.S. Western District of Texas. All counsel of record will be served via email and first class mail.

/s/Robert Henneke
ROBERT HENNEKE