# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| TEXAS STATE LULAC; VOTO LATINO, §<br>　　　　*Plaintiffs*, §<br>　§<br>v. §<br>　§<br>BRUCE ELFANT, in his official capacity as the §<br>Travis County Tax Assessor-Collector; §<br>JACQUELYN CALLANEN, in her official §<br>capacity as the Bexar County Elections §<br>Administrator; ISABEL LONGORIA, in her §<br>official capacity as the Harris County Elections §<br>Administrator; YVONNE RAMON, in her §<br>official capacity as the Hidalgo County Elections §<br>Administrator; MICHAEL SCARPELLO, in his §<br>official capacity as the Dallas County Elections §<br>Administrator; and LISA WISE, in her official §<br>capacity as El Paso County Elections §<br>Administrator, §<br>　　　　*Defendants*, §<br>　§<br>and §<br>　§<br>KEN PAXTON, in his official capacity as §<br>Attorney General of Texas; LUPE C. TORRES, §<br>in his official capacity as Medina County §<br>Elections Administrator; and TERRIE §<br>PENDLEY, in her official capacity as Real §<br>County Tax Assessor-Collector, §<br>　　　　*Intervenor-Defendants*. § | Civil Action No. 1:21-cv-546-LY |

---

**INTERVENOR-DEFENDANTS LUPE C. TORRES AND TERRIE PENDLEY'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

---

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................... ii

INTRODUCTION ........................................................................................................................... 1

ARGUMENT .................................................................................................................................. 1

I.      Plaintiffs Lack Evidence to Support Standing. ................................................................... 1

        A.      There is no evidence to establish Article III standing. ................................................. 2

        B.      There is no evidence to establish statutory standing or third-party standing. ............. 6

II.     Plaintiffs Ignore SB 1111 Provisions that Alleviate the Claimed Burden. ......................... 9

CONCLUSION ............................................................................................................................... 12

CERTIFICATE OF SERVICE ........................................................................................................... 14

## TABLE OF AUTHORITIES

**Cases**

*Abramski v. United States*,
  573 U.S. 169 (2014) .................................................................................................. 10

*Cameron Cnty. Hous. Auth. v. City of Port Isabel*,
  997 F.3d 619 (5th Cir. 2021) ...................................................................................... 2

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ................................................................................................ 2, 4

*Conn v. Gabbert*,
  526 U.S. 286 (1999) ................................................................................................ 7, 8

*Coon v. Ledbetter*,
  780 F.2d 1158 (5th Cir. 1986) ................................................................................ 7, 8

*Ctr. for Biological Diversity v. EPA*,
  937 F.3d 533 (5th Cir. 2019) .................................................................................. 3, 6

*DaimlerChrysler Corp. v. Cuno*,
  547 U.S. 332 (2006) .................................................................................................... 2

*Davis v. FEC*,
  554 U.S. 724 (2008) .................................................................................................... 2

*Gill v. Whitford*,
  138 S. Ct. 1916 (2018) ................................................................................................ 8

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982) .................................................................................................... 2

*In re Gee*,
  941 F.3d 153 (5th Cir. 2019) ...................................................................................... 2

*King v. St. Vincent's Hosp.*,
  502 U.S. 215 (1991) .................................................................................................... 9

*Kowalski v. Tesmer*,
  543 U.S. 125 (2004) ................................................................................................ 8, 9

*Lewis v. Casey*,
    518 U.S. 343 (1996) .................................................................................................. 2

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014) ............................................................................................... 6, 7

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ............................................................................................... 2, 6

*NAACP v. City of Kyle*,
    626 F.3d 233 (5th Cir. 2010) .................................................................................. 2

*OCA-Greater Houston v. Texas*,
    867 F.3d 604 (5th Cir. 2017) .................................................................................. 5

*Pharmacy Buying Assoc., Inc. v. Sebelius*,
    906 F. Supp. 2d 604 (W.D. Tex. 2012) ................................................................... 9

*Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*,
    748 F.3d 583 (5th Cir. 2014) .................................................................................. 9

*Powers v. Ohio*,
    499 U.S. 400 (1991) .................................................................................................. 8

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) .................................................................................................. 6

*Tenth St. Residential Ass'n v. City of Dallas*,
    968 F.3d 492 (5th Cir. 2020) .................................................................................. 4

*Warth v. Seldin*,
    422 U.S. 490 (1975) .................................................................................................. 7

*Young Conservatives of Tex. Found. v. Univ. of N. Tex.*,
    No. 4:20-CV-973-SDJ, 2022 U.S. Dist. LEXIS 65795 (E.D. Tex. 2022) .......... 6

**Statutes**

42 U.S.C. § 1983 ............................................................................................................ 6, 7

Texas Election Code § 1.015 ...................................................................................... 1, 10

Texas Election Code § 15.054 .................................................................................. 10, 11

## INTRODUCTION

Far from bearing their burden to show they are entitled to summary judgment, Plaintiffs have revealed that they have no evidence to support their claims. Plaintiffs cite to no evidence showing that SB 1111 burdens the right to vote or that any burden outweighs the state's interests. Nor do Plaintiffs cite to evidence showing that SB 1111 violates the Twenty-Sixth Amendment. What is more, Plaintiffs mischaracterize SB 1111's provisions. For example, Plaintiffs' motion tellingly glosses over provisions that alleviate the claimed burden on groups that they claim SB 1111 harms. Any one of these grounds is reason enough to deny Plaintiffs' motion. Furthermore, Plaintiffs' claims suffer from an even greater defect: Plaintiffs lack standing to bring any of them. Because Plaintiffs have failed to establish standing, the Court must deny Plaintiffs' motion for summary judgment and dismiss the case.

## ARGUMENT

As explained in Defendant-Intervenor Ken Paxton's Response to Plaintiffs' Motion for Summary Judgment (ECF No. 154-1), there are numerous reasons why the Court should deny Plaintiffs' motion for summary judgment.[1] In the interest of brevity, Intervenor-Defendants Torres and Pendley will highlight two: (1) Plaintiffs' lack of standing, and (2) SB 1111 provisions that alleviate the purported burden on voting rights.

### I. Plaintiffs Lack Evidence to Support Standing.

Plaintiffs' motion betrays their lack of Article III and statutory standing to challenge SB 1111's provisions. Plaintiffs have no evidence that they (or their members) have suffered a concrete and particularized injury, much less that any such injury is fairly traceable to Defendants.

---

[1] Intervenor-Defendants Lupe C. Torres, in his official capacity as Medina County Elections Administrator, and Terrie Pendley, in her official capacity as Real County Tax Assessor-Collector, take no position regarding the interpretation of Texas Election Code § 1.015(b), but otherwise join Defendant-Intervenor Paxton's Response.

1

Plaintiffs likewise have no evidence that they have third-party standing or that they are within 42 U.S.C. § 1983's zone of interests. Accordingly, Plaintiffs are not entitled to summary judgment, and the Court should dismiss the case.

        **A.**      **There is no evidence to establish Article III standing.**

Plaintiffs tellingly attempt to treat the standing question as an afterthought or a foregone conclusion. But Article III standing is indispensable to the Court's jurisdiction. This Court cannot overlook Plaintiffs' inability to cite to evidence establishing their standing.

Plaintiffs bear the burden of "establish[ing] standing for each and every provision they challenge." *In re Gee*, 941 F.3d 153, 160 (5th Cir. 2019); *see Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996) ("[S]tanding is not dispensed in gross."); *Davis v. FEC*, 554 U.S. 724, 734 (2008) ("Rather, 'a plaintiff must demonstrate standing for each claim he seeks to press' and 'for each form of relief' that is sought." (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)). That means to satisfy Article III a plaintiff must show—for every challenged provision—(1) an "actual or imminent" injury that is "concrete and particularized," (2) fairly traceable to "the challenged action of the defendant," and that is (3) likely to be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (quotations omitted). Moreover, a plaintiff cannot rest on "mere allegations" to carry its standing burden at the summary-judgment stage. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 411–12 (2013) (quotation omitted). Instead, it "must set forth by affidavit or other evidence specific facts" to establish standing. *Id.* (quotation omitted); *see Cameron Cnty. Hous. Auth. v. City of Port Isabel*, 997 F.3d 619, 622 (5th Cir. 2021) (same).

Organizations are not exempt from these standing requirements. To establish standing, organizations must usually provide evidence of a "concrete and demonstrable" injury to them. *NAACP v. City of Kyle*, 626 F.3d 233, 238 (5th Cir. 2010) (quoting *Havens Realty Corp. v.*

2

*Coleman*, 455 U.S. 363, 379 (1982)).  "[A]n organization may establish injury in fact by showing that it had diverted *significant* resources to counteract the defendant's conduct," but a "setback" to "abstract social interests" does not qualify as an injury-in-fact.  *Id.* at 238–39 (emphasis added).  A self-inflicted injury also does not qualify.  *See Clapper*, 568 U.S. at 416 (explaining that parties "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm").  Thus, when a statute does not regulate or constrain a party, that party cannot create standing "by claiming that they experienced a 'chilling effect.'"  *Id.* at 419.

In some circumstances, organizations can establish associational standing.  But to do so, they must show that "one of their members" could "independently meet the Article III standing requirements," including "the injury-in-fact requirement."  *See Ctr. for Biological Diversity v. EPA*, 937 F.3d 533, 536–37 (5th Cir. 2019) (quotation omitted).  They must also show that "the interests the association seeks to protect are germane to the purpose of the organization" and that the "participation of individual members" is not required.  *Id.* (quotation omitted).

Here, there is no evidence that either Texas State LULAC ("LULAC") or Voto Latino have standing to challenge SB 1111's provisions.  Both claim organizational standing on two grounds, and LULAC additionally claims associational standing, but Plaintiffs fail to set forth specific evidence to support these standing assertions as required.  *See Clapper*, 568 U.S. at 411; *City of Port Isabel*, 997 F.3d at 622.

*First*, Plaintiffs wrongly allege they have organizational standing because SB 1111 injures them by deterring their voter registration efforts with a "threat of criminal prosecution for misadvising potential registrants."  Pls.' Mot. Summ. J., ECF No. 140 at 31.  But the evidence belies this allegation.  As Voto Latino's representative admitted, Voto Latino is not subject to criminal liability for speaking to college students about voter registration.  *See* Pls.' Summ. J. App.,

3

ECF No. 141 at App.091, (Q: You're not subject to criminal liability if you speak with college students, correct, about voter registration? A: That is correct."). LULAC's representative similarly had no evidence that LULAC itself was subject to any threat of criminal prosecution and discussed only the alleged impact of SB 1111 on members of collegiate LULAC councils. *See id.* at App.106. Plaintiffs' own evidence thus reflects that there is not an actual or imminent threat of criminal prosecution and that the SB 1111 provisions Plaintiffs challenge do not regulate LULAC or Voto Latino. Accordingly, Plaintiffs cannot manufacture an injury by claiming SB 1111 chills or deters their behavior. *See Clapper*, 568 U.S. at 416, 419. And, even if they could, Plaintiffs do not show that any purported threat of criminal prosecution is fairly traceable to the county election officials.

*Second*, Plaintiffs argue that SB 1111 injures them "by forcing them to divert resources away from their routine activities." Pls.' Mot. Summ. J., ECF No. 140 at 32. But once again Plaintiffs' evidence is insufficient to establish an injury-in-fact that is traceable to SB 1111 or the defendants. Plaintiffs fail to point to evidence that any alleged resources they diverted "constitute[d] 'significant resources'" that qualify as an Article III injury. *See Tenth St. Residential Ass'n v. City of Dallas*, 968 F.3d 492, 500 (5th Cir. 2020). And Fifth Circuit precedent is clear that "[n]ot every diversion of resources to counteract the defendant's conduct . . . establishes an injury in fact." *City of Kyle*, 626 F.3d at 238.

Plaintiffs' motion fails to cite to *any* evidence regarding what resources were diverted *as a result of SB 1111*. Plaintiffs instead offer vague testimony about resources being expended as a result of SB 1111, other new laws in Texas, and other laws in different states. *See* Pls.' Summ. J. App., ECF No. 141 at App.093 ("As a result of SB 1111 *and all the other laws* that came into effect post-January, we had to reallocate our funding and lower our goals to concentrate on voter

4

education." (emphasis added)); *id.* at App.094 ("[B]ecause there [were] the laws that were passed in the state of Texas *and others*, we actually had to shut down our Colorado program." (emphasis added)); *id.* at App.114 ("A. We're going to reduce those [immigration or criminal justice] efforts, and it's also not only SB 1111, *but SB 1*, both. Q. And that's what I'm trying to get at. How much money are you diverting on account of SB 1 versus SB 1111? A. It's hard to say . . . ." (emphasis added)). But vague testimony that resources were diverted because of a whole slew of laws at most shows that SB 1111 contributed to "a setback to [Plaintiffs'] abstract social interests;" it does not show that SB 1111 specifically caused Plaintiffs to divert their resources in a way that "concretely and perceptibly impaired" their ability to carry out their mission. *City of Kyle*, 626 F.3d at 239. To be sure, "an Article III injury-in-fact need not be substantial," but it does need to be "identifiable" and "fairly traceable to" the defendants' challenged conduct. *OCA-Greater Houston v. Texas*, 867 F.3d 604, 612, 614 (5th Cir. 2017) (quotation omitted). Plaintiffs fail to make this showing: their evidence does not establish a concrete injury-in-fact that is fairly traceable to SB 1111's challenged provisions and the defendants' conduct.

*Third*, Plaintiffs insist that LULAC has associational standing "because SB 1111 injures [LULAC's] members." Pls.' Mot. Summ. J., ECF No. 140 at 34.[2] But LULAC does not identify a single member who is injured by SB 1111, nor does it introduce any affidavits or declarations from its members that SB 1111 chills their speech. That is fatal to LULAC's standing claim: abstract evidence that some members may be injured at some point "is insufficient for associational standing." *City of Kyle*, 626 F.3d at 237. To establish standing, LULAC was required to "set forth by affidavit or other evidence specific facts of its member's injury," which it failed to do. *See*

---

[2] Voto Latino does not have members, *see* Pls.' Summ. J. App., ECF No. 141 at App.87, and Plaintiffs (correctly) do not claim that Voto Latino has associational standing.

*Young Conservatives of Tex. Found. v. Univ. of N. Tex.*, No. 4:20-CV-973-SDJ, 2022 U.S. Dist. LEXIS 65795, at *9 (E.D. Tex. 2022) (quoting *Lujan*, 504 U.S. at 561); *see also Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009) (rejecting organizations' self-descriptions of membership).

What is more, LULAC admitted that—despite "looking"—it could not identify a single member who was unable to register to vote due to SB 1111's residency provision. *See* Pls.' Summ. J. App., ECF No. 141 at App.107. LULAC's failed attempt to demonstrate that a member has suffered an injury-in-fact reveals the meritless nature of the claims that SB 1111 deters or prevents eligible voters from registering. In any event, even if LULAC could show that one of its members suffered an injury-in-fact, Plaintiffs did not show—or even attempt to show—that "neither the claim asserted nor the relief requested requires participation of individual members." *Ctr. for Biological Diversity*, 937 F.3d at 536 (quotation omitted). This provides yet another basis to conclude that Plaintiffs failed to carry their burden of establishing standing.

Because Plaintiffs' motion reveals that Plaintiffs lack Article III standing, there is no jurisdiction and "the court cannot proceed *at all*." *City of Kyle*, 626 F.3d at 237 (quotation omitted). The Court therefore cannot grant Plaintiffs' motion and must dismiss the case.

**B.    There is no evidence to establish statutory standing or third-party standing.**

Even if Plaintiffs could show Article III standing, Plaintiffs have failed to show they have statutory standing or third-party standing.[3] Plaintiffs do not have a cause of action under the statute that they seek relief—42 U.S.C. § 1983—and they cannot satisfy the third-party standing requirements.

---

[3]    Although a bit of a misnomer, statutory standing is used as shorthand to refer to the requirement that plaintiffs fall "within the class of plaintiffs whom Congress has authorized to sue." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 & n.4 (2014).

*1. Plaintiffs lack statutory standing.*

Plaintiffs failed to show that § 1983 authorizes them to bring their claims. Generally, "a statutory cause of action extends only to plaintiffs whose interests fall within the zone of interests protected by the law invoked." *Lexmark Int'l*, 572 U.S. at 129 (quotation omitted). That requires courts to look at the statute and determine whether the plaintiff "falls within the class of plaintiffs whom Congress has authorized to sue under [the invoked statute.]" *Id.* at 128. Plaintiffs in this case invoke § 1983, which creates a cause of action only for parties who have personally suffered a deprivation of a federal right:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable *to the party injured* . . . .

42 U.S.C. § 1983 (emphasis added). Accordingly, when plaintiffs "claim a deprivation of constitutional rights" under § 1983, they are "required to prove some violation of their personal [constitutional] rights." *Coon v. Ledbetter*, 780 F.2d 1158, 1160 (5th Cir. 1986)**Error! Bookmark not defined.**. Alleging non-constitutional harm and a violation of someone else's constitutional rights will not do. *See Conn v. Gabbert*, 526 U.S. 286, 289, 292–93 (1999) (holding an attorney "clearly had no standing to raise the alleged infringement of the rights of his client" in his § 1983 action (citing *Warth v. Seldin*, 422 U.S. 490, 514 (1975)).

Yet that is what Plaintiffs do here. At least two of Plaintiffs' claims are improperly contingent on the alleged deprivation of others' constitutional rights. Plaintiff claims SB 1111 constitutes an undue burden on the right to vote and that it abridges the voting rights of young college students, *see* Compl., ECF No. 1 at 15–17, but Plaintiffs are organizations, not citizens with voting rights, much less college students, *see* Pls.' Mot. Summ. J., ECF No. 140 at 31. As

7

such, Plaintiffs lack statutory standing to bring these claims. *See Gabbert*, 526 U.S. at 292–93; *Coon*, 780 F.2d at 1160; *cf. Gill v. Whitford*, 138 S. Ct. 1916, 1929 (2018) ("We have long recognized that a person's right to vote is individual and personal in nature." (quotation omitted)). Plaintiffs' remaining claim may rest, in part, on an allegation of a personal injury: a burden on their free speech rights under the First Amendment. *See* Compl., ECF No. 1 at 12–15. But the evidence dooms this claim. SB 1111 does not regulate Plaintiffs, so Plaintiffs' First Amendment claim fails. *See supra* pp. 3–4. And to the extent Plaintiffs rely on the First Amendment rights of others for their First Amendment claim, that too is improper. *See Gabbert*, 526 U.S. at 292–93; *Coon*, 780 F.2d at 1160.

    2. *Plaintiffs lack third-party standing.*

Plaintiffs have not demonstrated that they can challenge SB 1111 on behalf of others. Although courts generally do not "look[ ] favorably upon third-party standing," there are limited exceptions. *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004). For a plaintiff to show that a limited exception applies and it has third-party standing, a plaintiff must satisfy "three important criteria": (1) it has "suffered an 'injury in fact,'" (2) it has a "close relation to the third party," and (3) there is "some hindrance to the third party's ability to protect his or her own interests." *Powers v. Ohio*, 499 U.S. 400, 410–11 (1991).

Plaintiffs have failed to satisfy any of the three criteria. *First*, Plaintiffs have no evidence of an injury-in-fact as explained above. *Second*, Plaintiffs have not offered evidence showing that they have a sufficiently close relationship to third parties with potential claims—prospective voters who will allegedly be burdened by SB 1111—to assert their interests. Plaintiffs cannot overcome this lack of evidence by vague references to seeking relief for "members," "constituents and supporters," Pls.' Mot. Summ. J., ECF No. 140, at 3, especially when they cannot even identify a

member, constituent, or supporter who will be injured by SB 1111. Furthermore, any relationship between a "supporter" and organizations like Plaintiffs is a far cry from the usual relationships that courts have recognized as sufficiently close for third-party standing purposes. *See, e.g.*, *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004) (explaining past cases "have recognized an attorney-client relationship as sufficient to confer third-party standing"); *Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 748 F.3d 583, 589 (5th Cir. 2014) (recognizing third-party standing for abortion provider asserting the rights of pregnant patients).

*Third*, Plaintiffs point to no hindrance that would prevent third parties from challenging SB 1111 to protect their own hindrances. Nor can "a hypothetical hindrance" that Plaintiffs may assert in a reply brief satisfy this requirement. *See Pharmacy Buying Assoc., Inc. v. Sebelius*, 906 F. Supp. 2d 604, 616 (W.D. Tex. 2012) ("The Provider Plaintiffs in this case have wholly failed to show their patients, Medicaid recipients, are faced with any hindrance to the presentation of their own interests. Something more than a hypothetical hindrance is required."). Plaintiffs therefore have failed to establish they have statutory standing or third-party standing, much less Article III standing.

## II. Plaintiffs Ignore SB 1111 Provisions that Alleviate the Claimed Burden.

Among the numerous flaws with Plaintiffs' assertion that SB 1111 burdens the voting rights of college students (thereby imposing an age-based barrier on the right to vote) and the rights of transient voters, *see, e.g.*, Paxton's Resp., ECF No. 154-1 at pp. 20-24, the most egregious may be Plaintiffs' willful disregard of provisions that alleviate the purported burden.

It is a cardinal principle of statutory interpretation that statutes must be read as a whole. *See King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991) (following "the cardinal rule that a statute is to be read as a whole, since the meaning of statutory language, plain or not, depends on context" (quotations omitted)). A court cannot "interpret each word in a statute with

blinders on, refusing to look at the word's function within the broader statutory context." *Abramski v. United States*, 573 U.S. 169, 179 n.6 (2014). After all, "a provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme." *Id.* (quotation omitted).

Plaintiffs repeatedly flout this cardinal principle in interpreting SB 1111. Two examples are especially striking. *First*, Plaintiffs assert that Texas Election Code §§ 1.015(d) and (f) "restrict[] registration opportunities for college students" and thereby "denies and abridges the right to vote to newly enfranchised young Texans." Pls.' Mot., ECF No. 140 at 29. They argue that SB 1111 prevents young Texans who temporarily move to a college dormitory from registering to vote using their new college address or their old home address. *See id.* at 29–30 ("SB 1111 prohibits these students from establishing residence where they attend school temporarily, or at the home they inhabited before leaving for school, offering no other avenue for college students to register and vote."). What Plaintiffs fail to mention is that SB 1111 includes provisions that expressly allow college students to use campus post office boxes to register to vote even though they may not intend to continue living on campus in the future: Texas Election Code §§ 15.054(f) and 15.054(d)(2).[4]

Section 15.054(f) allows college students to use a campus post office box to register to vote:

> Notwithstanding the other provisions of this section, a voter enrolled as a full-time student who lives on campus at an institution of higher education may use the address of a post office box located on campus at an institution of higher education

---

[4]  Moreover, the Secretary of State's office has interpreted Texas Election Code § 1.015 as allowing college students to claim either a parent's home or a college residence as their residence for purposes of registering to vote. *See* App. to Paxton Mot. Summ. J., ECF No. 138-3 at App.—000062 (Ingram Dep. 145:7-146:19).

10

>may use the address of a post office box located on the campus of the institution or in a dormitory owned or operated by the institution to confirm the voter's residence.

*Id.* § 15.054(f).[5] And § 15.054(d)(2) further clarifies that, even when college students use a campus post office box for their registration address, they do not need to provide documentation confirming their residence for purposes of responding to a confirmation notice. *See id.* § 15.054(d)(2) (providing this section "does not apply to . . . a voter enrolled as a full-time student who lives on campus at an institution of higher education").

*Second*, Plaintiffs suggest that SB 1111 unduly burdens the voting rights of "transient voters and others without fixed addresses." Pls.' Mot. Summ. J. 27, ECF No. 140. Once again, Plaintiffs ignore an express provision that allows those without a fixed residence, such as those individuals who live on the street or in a shelter, to register to vote. Texas Election Code § 15.054(b) provides that such voters who reside in Texas but have no address may confirm their address for registration purposes by simply providing "an affidavit stating that the voter's residence in this state has no address" and providing "a concise description of the location of the voter's residence." Tex. Elec. Code § 15.054(b). This provision thus enables transient voters to register while also enabling the county registrar to assign the voter to the correct precinct. *See* Paxton Summ. J. App, ECF No. 138-3 at Appx.--000144–000145 (Longoria Dep. 189:11-194:1) (explaining they need to know where a voter lives to determine which ballot they get); *id.*, ECF No. 138-2 at Appx.--000007 (Election Advisory No. 2021-10) ("Certain voters are exempt from providing a photocopy of the residential proof if they reside in a place with no address, and they execute an affidavit providing a concise description of the location of their residence.").

---

[5] This provision further undercuts Plaintiffs' claims that SB 1111 somehow restricts their speech because they cannot tell a student whether "they can register on a college campus or not." Pls.' Summ. J. App., ECF No. 141, at App.097 (Voto Latino Dep. 79:10-12).

11

These provisions that alleviate the purported burdens on college students and transient voters underscore that Plaintiffs are wrong about both the interpretation and effect of SB 1111. SB 1111's text does not unduly burden, deny, or abridge voting rights, which is why Plaintiffs have not supplied evidence of a single person who has been harmed by SB 1111. *See* Paxton Summ. J. App., ECF No. 138-4 at Appx.--000173 (LULAC Dep. 68:6-8) ("Q: Have you seen any examples of that happening? A: The bills just passed this last session so it's too early."); *see also id.*, ECF No. 138-8 at Appx.--000280 (Voto Latino Dep. 142:24-143:13) ("Q: Sitting here today, are you aware of any specific examples of a constituent of Voto Latino, who decided not to register or vote on account of SB 1111? A: I think that's part of the challenges that we don't know who we turned away as a result of SB 1111. Q: So you don't know of any? A: Not that I'm aware of … ."). Because there is no evidence of any person actually burdened and the clear statutory language alleviates the burdens alleged, Plaintiffs have failed to show that they are entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, along with reasons given in Defendant-Intervenor Ken Paxton's Response (ECF No. 154-1), Intervenor-Defendants Torres and Pendley request that this Court deny Plaintiffs' motion for summary judgment.

Respectfully submitted,

*/s/Autumn Hamit Patterson*
ROBERT HENNEKE
Texas Bar No. 24046058
rhenneke@texaspolicy.com
AUTUMN HAMIT PATTERSON
Texas Bar No. 24092947
apatterson@texaspolicy.com
CHANCE WELDON
Texas Bar No. 24076767
cweldon@texaspolicy.com
MUNERA AL-FUHAID
Texas Bar No. 24094501
mal-fuhaid@texaspolicy.com
TEXAS PUBLIC POLICY FOUNDATION
901 Congress Avenue
Austin, Texas 78701
Telephone:     (512) 472-2700
Facsimile:     (512) 472-2728

*Attorneys for Intervenor-Defendants Lupe Torres and Terrie Pendley*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed electronically on May 23, 2022, with the Clerk of the Court for the United States District Court for the Western District of Texas by using the CM/ECF system, causing electronic service upon all counsel of record.

/s/Autumn Hamit Patterson
Autumn Hamit Patterson