| | |
|---|---|
| TEXAS STATE LULAC;<br>VOTO LATINO,<br><br>     Plaintiffs,<br><br>  v.<br><br>BRUCE ELFANT, in his official capacity as the Travis County Tax Assessor-Collector; JACQUELYN CALLANEN, in her official capacity as the Bexar County Elections Administrator; ISABEL LONGORIA, in her official capacity as the Harris County Elections Administrator; YVONNE RAMÓN, in her official capacity as the Hidalgo County Elections Administrator; MICHAEL SCARPELLO, in his official capacity as the Dallas County Elections Administrator; LISA WISE, in her official capacity as the El Paso County Elections Administrator,<br><br>     Defendants,<br> and<br><br>KEN PAXTON, in his official capacity as Attorney General of Texas; LUPE TORRES, in their official capacity as Medina County Election Administrator; TERRIE PENDLEY, in her official capacity as the Real County Tax-Assessor Collector,<br><br>    Intervenor-Defendants. | Case No. 1:21-cv-00546-LY |

## SUPPLEMENTAL APPENDIX TO PLAINTIFFS TEXAS STATE LULAC AND VOTO LATINO'S RESPONSE TO INTERVENOR-DEFENDANT KEN PAXTON'S MOTION FOR SUMMARY JUDGMENT

Under Local Rule CV-7(c)(1), Plaintiffs Texas State LULAC and Voto Latino submit this Supplemental Appendix to its Response to Intervenor-Defendant Ken Paxton's Motion for Summary Judgment, filed contemporaneously herewith.

# TABLE OF CONTENTS

**Deposition Transcripts**

Lupe Torres 30(b)(6) Deposition Excerpts …………………………....…………......Suppl. App. 001

Voto Latino 30(b)(6) (Maria Teresa Kumar) Deposition Excerpts……………….….…Suppl. App. 004

Dated: May 23, 2022                                    Respectfully submitted,


                                                       /s/ Uzoma N. Nkwonta
                                                       Uzoma N. Nkwonta*
                                                       Christopher D. Dodge*
                                                       Graham W. White*
                                                       Melinda K. Johnson*
                                                       Michael B. Jones*
                                                       **ELIAS LAW GROUP LLP**
                                                       10 G Street NE, Suite 600
                                                       Washington, D.C. 20002
                                                       Telephone: (202) 968-4490
                                                       Facsimile: (202) 968-4498
                                                       unkwonta@elias.law
                                                       cdodge@elias.law
                                                       gwhite@elias.law
                                                       mjohnson@elias.law
                                                       mjones@elias.law

                                                       *Counsel for Plaintiffs*
                                                       *Admitted *Pro Hac Vice*


## CERTIFICATE OF SERVICE

On May 23, 2022, I electronically submitted the foregoing document with the clerk of

court for the U.S. District Court, Western District of Texas, using the electronic case filing

system of the court. I hereby certify that I have served all parties electronically or by another

manner authorized by Federal Rule of Civil Procedure 5(b)(2).


                                                       /s/ Christopher D. Dodge
                                                       Christopher D. Dodge

Page 1

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

_____

| | |
|---|---|
| TEXAS STATE LULAC; VOTO LATINO, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| -vs- | ) |
| | ) |
| BRUCE ELFANT, in his official capacity as the Travis County Tax Assessor-Collector, et al. | ) Case No. ) 1:21-cv-00546-LY ) |
| | ) |
| Defendants, | ) |
| | ) |
| and | ) |
| | ) |
| KEN PAXTON, in his official capacity as Attorney General of Texas, et al., | ) ) ) ) |
| Intervenor- | ) |
| Defendants. | ) |

_____)

VIDEOTAPED RULE 30(b)(6) DEPOSITION OF
INTERVENOR-DEFENDANT LUPE TORRES
BY AND THROUGH ITS DESIGNEE
GUADALUPE TORRES
APRIL 8, 2022
1:04 P.M.


REPORTED BY:
DEBRA SAPIO LYONS, RDR, CRR, CRC, CCR, CLR, CPE

_____
DIGITAL EVIDENCE GROUP
1730 M Street, NW, Suite 812
Washington, D.C. 20036
(202) 232-0646

**Suppl. App. 001**

4/8/2022    Texas State LULAC, et al., v. Bruce Elfant, et al.    Lupe Torres 30(b)(6)

Page 80

1        Q.      Okay.  So does that impose any

2    obligation on your office?

3        A.      Yes.

4        Q.      Okay.  And so what do you have to

5    do when a voter attempts to register but they

6    supply, as it says here, "a commercial post

7    office box or similar location" for their

8    address?

9        A.      So we would send that -- that voter

10   a notice of incomplete.  They're not allowed

11   to -- to have a commercial post office box or a

12   similar --

13       Q.      Okay.  And is -- I apologize for

14   interrupting you.

15              I think you said that a voter is

16   not allowed to have a commercial post office

17   box.  Was there something else you were going to

18   say?

19       A.      Yeah, I was just basically -- you

20   know, or a similar location that does not

21   correspond to a residence.

22       Q.      Okay.  Is that -- is that something

4/8/2022    Texas State LULAC, et al., v. Bruce Elfant, et al.    Lupe Torres 30(b)(6)

Page 81

1    new that SB 1111 does, impose that post office

2    box requirement?

3                MS. HUNKER:  Objection, form.

4                MS. AL-FUHAID:  Objection, form.

5                THE WITNESS:  No, I think that's --

6        that's -- that I know of, I think that's

7        been a while.  It's --

8    BY MR. JONES:

9        Q.    Okay.

10        A.    It's been law for a while.

11        Q.    Okay.  So I'm going to refer to

12    this as the "post office box provision."  And

13    this is the last time I'm going to create a new

14    term for you to remember.

15        A.    Okay.

16        Q.    Is that okay?

17        A.    I guess, yeah.

18        Q.    All right.  So how does your office

19    determine whether a voter's residence address,

20    referring to the address on the form, is a

21    commercial post office box?

22        A.    Well, we usually -- we look it up

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

TEXAS STATE LULAC; VOTO          §
LATINO,                          §
                                 §
      PLAINTIFFS,                §
                                 §
v.                               §
                                 §
BRUCE ELFANT, IN HIS             §
OFFICIAL AS THE TRAVIS           §
COUNTY TAX                       §
ASSESSOR-COLLECTOR;              §
JACQUELYN CALLANEN, IN           §
HER OFFICIAL CAPACITY AS         §
THE BEXAR COUNTY                 §
ELECTIONS ADMINISTRATOR;         §
ISABEL LONGORIA, IN HER          §
OFFICIAL CAPACITY AS THE         §
HARRIS COUNTY ELECTIONS          §
ADMINISTRATOR; YVONNE            §
RAMON IN HER OFFICIAL            §
CAPACITY AS THE HIDALGO          §
COUNTY ELECTIONS                 §   CASE NO. 1:21-CV-00546-LY
ADMINISTRATOR; MICHAEL           §
SCARPELLO, IN HIS                §
OFFICIAL CAPACITY AS THE         §
DALLAS COUNTY ELECTIONS          §
ADMINISTRATOR; LISA WISE,        §
IN HER OFFICIAL CAPACITY         §
AS THE EL PASO COUNTY            §
ELECTIONS ADMINISTRATOR          §
                                 §
      DEFENDANTS,                §
                                 §
AND KEN PAXTON, IN HIS           §
OFFICIAL CAPACITY AS             §
ATTORNEY GENERAL OF TEXAS,§
LUPE C. TORRES, IN HER           §
OFFICIAL CAPACITY AS             §
MEDINA COUNTY ELECTIONS          §
ADMINISTRATOR, AND TERRIE §
PENDLEY, IN HER OFFICIAL         §
CAPACITY AS REAL COUNTY          §
TAX ASSESSOR-COLLECTOR           §
                                 §
      INTERVENOR-DEFENDANTS. §

**Suppl. App. 004**

1 _____

2        ORAL AND VIDEOCONFERENCE DEPOSITION OF

3           MS. MARIA TERESA KUMAR

4             APRIL 5, 2022

5 _____

6        ORAL AND VIDEOCONFERENCE DEPOSITION OF

7 MS. MARIA TERESA KUMAR, produced as a witness at the

8 instance of the INTERVENOR-DEFENDANT, and duly sworn,

9 was taken in the above-styled and numbered cause on

10 APRIL 5, 2022, from 11:02 a.m. to 3:10 p.m., before

11 Michelle Hartman, Certified Shorthand Reporter and

12 Registered Professional Reporter in and for the State of

13 Texas, reported by machine shorthand via Zoom

14 videoconference, pursuant to the Federal Rules of Civil

15 Procedure, the Emergency Orders regarding the COVID-19

16 State of Disaster, and the provisions stated on the

17 record or attached hereto.

18

19

20

21

22

23

24

25

**Suppl. App. 005**

 1    deadlines.

 2          Q.    But in the case of Texas, the scale of the

 3    change was very large, and you also find it confusing

 4    and therefore more difficult to make the updates --

 5          A.    Correct.

 6          Q.    -- is that correct?

 7          A.    Correct.

 8          Q.    Now, you had talked about your goals

 9    decreasing.  I think you said 25 percent?

10          A.    Correct, for voter registration.

11          Q.    For voter registration.

12          A.    Mm-hmm.  Yeah.

13          Q.    I'm guessing -- this is a similar question

14    I asked before, but into a different context.  How much

15    of that 25 percent is a result of SB 1111?

16          A.    I'd say a large part of it because we have

17    to be able to retool and focus on college students in a

18    different way.

19          Q.    Sorry, I was taking notes.

20                And so would you say that you were

21    conducting the same voter education work in 2022 as you

22    did in 2021, but the content was different?

23          A.    I would say it's -- it's very different.

24          Q.    It's very different?

25          A.    Very different.

Suppl. App. 006

1         Q.   Are there any other documents that are not

2   listed that you can identify here with me today that

3   would substantiate your position?

4         A.   Not that I'm aware of.

5         Q.   So during -- let me put this down --

6   during your description of these documents, as well as

7   earlier in our conversation, you insinuated that the

8   SB 1111 was enacted in order to inhibit young voters; is

9   that correct?

10        A.   Yes, yes.

11        Q.   And what is the basis for this belief?

12        A.   The largest population, as far as I

13   understand, that have both temporary addresses and

14   temporary and home addresses that they cannot use is

15   college students.   And as a result, we know if you look

16   at the forecast of how many people are going to turn 18

17   in Texas in the next -- just this in the last two years,

18   it's not small.   We're talking about close to nearly

19   three-quarter million.   It's a big deal.   Those are big

20   shifts.

21          And so, if you are creating legislation

22   that seems to be so surgical in trying to prevent equal

23   participation, it is very much at the heart of why we're

24   contesting SB 1111.   We know that over a quarter

25   million, close to 300,000, Latino youth alone are going

Suppl. App. 007

1    to turn 18 by the midterm.

2                    We're doing our darndest trying to

3    explain things to them, but SB 1111 makes it harder

4    because we can't tell them with a 100 percent guarantee

5    and certitude that if they register to vote on campus:

6    One, that they are not in violation of the law if they

7    register at because it is a temporary address.  And if

8    they are to register to vote using their parents'

9    address that they are not afoul of the law because they

10   technically did not reside there when they actually

11   filled out that application.

12               Q.  So if I understood you correctly, it's the

13   impact that it -- that this law has on college students

14   to form the basis of your belief?

15               A.  The potential impact, yes, the chilling

16   effect and that we can't communicate freely with

17   certitude that they will not be in violation.

18               Q.  Okay.  So the potential impact on college

19   students and young voters, that's the basis of your --

20               A.  In our -- in our material ability to do

21   our work as well, right, so.

22               Q.  And so you also made the insinuation that

23   the Texas Legislature enacted Senate Bill 1111 in order

24   to inhibit Latino vote; is that correct?

25               A.  Latino youth vote in particular and young

Suppl. App. 008

1    people in general just --

2            Q.  So is it -- let me see if I understand

3    this correctly --

4            A.  Reason I say that is that 75 percent of

5    Latinos voted for Biden in the last election that were

6    young voters versus, I believe, 51 percent of young

7    white voters voted.  So it is --

8            Q.  So is it your contention that the bill was

9    targeted at Latino voters or your contention is that the

10   bill was targeted at young voters, some of which just

11   happened to be Latino?

12           A.  I would say that it was targeted at young

13   voters as whole, but in particular young Latino voters,

14   because they're by definition of their demographics, low

15   propensity voters.  Many of them do not have a history

16   of voting in the household.

17               So our program where civic education we

18   oftentimes have to speak to get them involved because

19   they don't have those conversations neither at school

20   nor in the household unlike white voters, who often do.

21   So we try to create a culture of voting and awareness

22   for a constituency that does not have that, you know,

23   that knowledge and that built in understanding of how

24   things work with our democracy.

25           Q.  And so the basis of this belief that is

 1    also the potential impact that this would have on

 2    college students as well as the effect on your ability

 3    to communicate, correct?

 4              A.   Correct.

 5              Q.   I am going to pull up my next exhibit I've

 6    already shared it in chat function.

 7                   Do you see the document on your screen?

 8              A.   Yeah, yes.

 9              Q.   All right.  This is the House Journal

10    specifically for Tuesday, May 25, 2021.  Would you agree

11    with that description?

12                   (WHEREUPON, the document was marked for

13                   identification as Exhibit No. 7 and is

14                   attached hereto.)

15              A.   Mm-hmm.  Yes.

16              Q.   So please scroll down.

17                   You can see it says SB 1111 on third

18    reading, correct?

19              A.   Yes.

20              Q.   All right.  Okay.  I will present to you

21    that I cut out the extraneous pages so that this was

22    manageable.  So this is not the entirety of the House

23    Journal for that day, but rather the portion that

24    specifically deals with SB 1111.  So that's just to

25    clarify.

Suppl. App. 010

```
 1    that they have brought in an onslaught of 50 bills

 2    trying to chill the voter participation of an increase

 3    in an interest in -- in the process along party lines

 4    makes one wonder why?  Texas, according to university

 5    studies, is already the hardest to-vote state with the

 6    most restrictions.  I mean, dead last.

 7                And then see an increase in participation

 8    despite all of those hurdles and to come up with a slew

 9    of legislation to try to prevent that, you know, that

10    enfranchisement just seems to be at odds with the

11    purpose of participation.  And again, it falls on party

12    lines.  So there is definitely a chilling effect in this

13    case among young people and particularly young Latinos.

14    Again, we're expecting 800,000 Latinos to -- to come of

15    age between the last election in 20 -- in 2024.

16         Q.    (BY MS. HUNKER) And so what evidence do

17    you have a disparate impact on college students or on

18    Latino voters?

19         A.   I think it's been my whole testimony.

20    We've had to divert resources and retool them and we

21    have to explain what is happening.  I am not clear and I

22    don't think it -- you know, my counsel couldn't firmly

23    state either what is actually -- how someone can safely

24    vote as a college student in the state of Texas now

25    after this passage.
```

Suppl. App. 011