UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| TEXAS STATE LULAC; VOTO LATINO,<br>    *Plaintiffs*,<br><br>v.<br><br>BRUCE ELFANT, in his official capacity as the Travis County Tax Assessor-Collector; JACQUELYN CALLANEN, in her official capacity as the Bexar County Elections Administrator; ISABEL LONGORIA, in her official capacity as the Harris County Elections Administrator; YVONNE RAMON, in her official capacity as the Hidalgo County Elections Administrator; MICHAEL SCARPELLO, in his official capacity as the Dallas County Elections Administrator; and LISA WISE, in her official capacity as El Paso County Elections Administrator,<br>    *Defendants*,<br><br>and<br><br>KEN PAXTON, in his official capacity as the Attorney General of Texas, LUPE C. TORRES, in his official capacity as Medina County Elections Administrator, and TERRIE PENDLEY, in her official capacity as Real County Tax Assessor-Collector,<br>    *Intervenor-Defendants*. | CIVIL ACTION NO. 1:21-CV-546-LY |

**INTERVENOR-DEFENDANTS KEN PAXTON, LUPE C. TORRES,
AND TERRIE PENDLEY'S OPPOSED MOTION FOR STAY, OR, IN THE
ALTERNATIVE, FOR ADMINISTRATIVE STAY, PENDING APPEAL**

TO THE HONORABLE LEE YEAKEL:

Intervenor-Defendants Ken Paxton, Lupe C. Torres, and Terrie Pendley, in their official capacities, (collectively, Intervenors) file this Motion to Stay the Court's Order on Cross-Motions for

1

Summary Judgment, Final Judgment, ECF 171–72, and the Court's permanent injunction included therein, pending appeal. Should the Court deny Intervenor-Defendants' Motion to Stay, Intervenors request, in the alternative, that the Court enter an order granting a seven-day administrative stay to allow the Intervenor Defendants to seek further relief at the appellate level.

Only eight weeks before voter registration for the 2022 election is scheduled to close, the Court's opinion rewrites the Texas Election Code's provisions regarding voter residency by enjoining the enforcement of certain provisions and declaring them unconstitutional. A stay pending appeal is warranted to avoid disruption to the voter-registration process and to allow the Fifth Circuit to assess the merits of the Court's ruling before it goes into effect for several reasons. *First*, the ruling implicates serious legal questions and Intervenors have raised substantial arguments on the merits, which will likely be successful on appeal. *Second*, enjoining a constitutional state election law inflicts irreparable harm on the State, particularly in the weeks leading up to an election. *Third*, the balance of equities weighs against disrupting election procedures in Defendants' and Intervenors' counties and causing confusion in other Texas counties and among voters. Any harm that Plaintiffs would face if a stay were granted is speculative at best, and the public's interest is aligned with the State's interest in this case. Moreover, Plaintiffs have identified no individual voters harmed by this law, highlighting that the challenged provisions do not unconstitutionally burden anyone's right to vote and that a stay is in the public interest. The Court should therefore grant a temporary stay while the Fifth Circuit considers the merits of the permanent injunction.

## BACKGROUND

Plaintiffs sued certain county election officials seeking to have three provisions in the Texas Election Code declared unconstitutional and enjoined: (1) "the P.O. Box Provision" in § 15.053(a), (2) the "Residence Provision" in § 1.015(b), and (3) the "Temporary-Relocation Provision" in § 1.015(f). Ken Paxton, Lupe C. Torres, and Terrie Pendley, in their official capacities as the Attorney

General of Texas, Medina County Election Administrator, and Real County Tax Assessor-Collector, respectively, intervened in this suit to defend Texas's democratically enacted laws. After discovery, Intervenors, Defendant Yvonne Ramón, and Plaintiffs filed competing motions for summary judgment. The Court largely granted Plaintiffs' Motion for Summary Judgment and ruled against Intervenors and Defendants, enjoining Defendants from enforcing Texas Election Code § 15.053(a) in part and from enforcing Texas Election Code § 1.015(b) and (f) at all. ECF 171 at 31–32.

On August 4, 2022, Intervenors Paxton, Torres, and Pendley filed a notice of appeal, ECF 173, and now respectfully request that the Court stay its injunction pending appeal. Because the permanent injunction will disrupt the State's election processes and cause confusion as the 2022 General Election approaches, Intervenors respectfully request that the Court quickly issue a ruling on this motion (no later than August 12, 2022) so that Intervenors may file an appropriate motion for relief in the Fifth Circuit in the event the Court denies this motion.

## ARGUMENT

### I. Legal Standard

Before seeking relief from the Fifth Circuit, "[a] party must ordinarily move first in the district court" for "a stay of the judgment or order" pending appeal or for "an order suspending . . . an injunction while an appeal is pending." Fed. R. App. P. 8(a)(1). Federal Rule of Civil Procedure 62(d) similarly authorizes a court to suspend an injunction during the pendency of an appeal from a final judgment. Fed. R. Civ. P. 62(d). As the Supreme Court has repeatedly explained, there is a four-factor test that "governs a court's consideration of a motion for stay pending appeal: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *United States v. Transocean Deepwater Drilling, Inc.*, 537 F. App'x 358, 360 (5th Cir. 2013) (per curiam) (quoting *Nken*

3

*v. Holder*, 556 U.S. 418, 426 (2009)); *accord Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 410 (5th Cir. 2013).

These factors are not applied in "a rigid, mechanical fashion," but rather "the movant 'need only present a substantial case on the merits when a serious legal question is involved and show that the balance of equities weighs heavily in favor of granting the stay,'" as opposed to demonstrating a likelihood of success on the merits. *United States v. Baylor Univ. Med. Ctr.*, 711 F.2d 38, 39 (5th Cir. 1983) (per curiam) (quoting *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. Unit A June 1981)). A stay is particularly appropriate when existing case law does not provide clarity or guidance in resolving the serious legal questions involved. *See Texas v Ysleta Del Sur Pueblo*, No. EP-17-CV-179-PRM, 2019 WL 5589051, at *1–2 (W.D. Tex. March 28, 2019) (granting stay given serious legal question raised and lack of clarity from existing precedent). A stay pending appeal "simply suspend[s] judicial alteration of the status quo," which allows "appellate court[s] to act responsibly," "bring considered judgment" to the matter, and faithfully "fulfill their role in the judicial process." *Nken*, 556 U.S. at 427, 429 (internal quotation marks omitted).

In addition, this Court must weigh "considerations specific to election cases," namely, that "[c]ourt orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls." *Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006). The U.S. Supreme Court therefore has "repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election," and that when they do so, defenders of the status quo have necessarily "made a strong showing that [they are] likely to succeed on the merits of [their] appeal." *Tex. All. for Retired Ams. v. Hughs*, 976 F.3d 564, 566–68 (5th Cir. 2020) (citing *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S.Ct. 1205, 1207 (2020)). The "timing of the decisions rather than merits" of the legal questions raised "seems to be the key." *Veasey v. Perry*,

769 F.3d 890, 895 (5th Cir. 2014); *see, e.g., Husted v. Ohio State Conf. of NAACP.*, 573 U.S. 988 (2014) (staying a lower court order that changed election laws sixty days before the election).

**II.     The Court should grant a stay pending appeal.**

**A. Intervenors have raised serious legal questions that merit a stay pending appeal.**

Intervenors have presented a substantial case on the merits regarding serious legal questions relating to standing, constitutional rights, and the proper interpretation of a democratically enacted state law. The standing arguments raise serious questions regarding whether this Court had subject-matter jurisdiction to consider Plaintiffs' claims at all. Furthermore, Intervenors demonstrated a substantial likelihood of success on the merits regarding the proper interpretation of the relevant Texas Election Code provisions and whether they impose an unconstitutional burden on the right to vote. This Court, of course, has rejected Intervenors' arguments on these points, but it was largely deciding issues of first impression by means of an *Erie* guess. Given the new issues raised by this case and the substantial support for Intervenors' arguments—not to mention the lack of evidence that a single, identifiable voter has been or will be negatively impacted by the challenged provisions of the Texas Election Code—the Court should give the Fifth Circuit an opportunity to review these issues before the injunction is implemented.

        1.  *Plaintiffs failed to prove they have Article III standing and cannot demonstrate statutory standing.*

The Court correctly determined that Plaintiffs lack associational standing; however, it failed to hold Plaintiffs to their burden of proving that they have organizational standing. ECF 171 at 6–12. After all, "[m]ere redirection of resources in response to another party's actions does not supply standing," and "there is 'no legally-protected interest in not expending . . . resources on behalf of individuals for whom [the plaintiff] . . . advocates.'" *LULAC v. Abbott*, No. 3:21-CV-259, 2022 U.S. Dist. LEXIS 91761, at *19 (W.D. Tex. May 23, 2022) (three-judge court) (quoting *Ass'n for Retarded Citizens of Dall. v. Dall. Cny. Mental Health & Mental Retardation Ctr. Bd. of Trs.*, 19 F.3d 241, 244 (5th

5

Cir. 1994)). Furthermore, there is no evidence showing that Plaintiffs diverted resources specifically as a result of the P.O. Box Provision, the Residence Provision, and the Temporary-Relocation Provision, nor is there any evidence that these provisions chilled Plaintiffs' speech. *See California v. Texas*, 141 S.Ct. 2104, 2115, 2119 (2021) (declining to find standing because plaintiffs did not show challenged provisions caused alleged financial injury). Plaintiffs' failure to prove a First Amendment harm also dooms its ability to demonstrate statutory standing for its § 1983 claims, because the Court was correct that Plaintiffs lack third-party standing to bring § 1983 claims on behalf of potential Texas voters.

Plaintiffs bear the burden of "establish[ing] standing for each and every provision they challenge." *In re Gee*, 941 F.3d 153, 160 (5th Cir. 2019); *see Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996) ("[S]tanding is not dispensed in gross."); *Davis v. FEC*, 554 U.S. 724, 734 (2008) ("Rather, a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief' that is sought." (quotation omitted)). That means Plaintiffs must provide evidence—for every challenged SB 1111 provision—that (1) an "actual or imminent" injury is "concrete and particularized," (2) fairly traceable to "the challenged action of the defendant," and is (3) likely to be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (quotations omitted); *see Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 411–12 (2013) (explaining plaintiffs "must set forth by affidavit or other evidence specific facts" to establish standing (quotation omitted)); *accord California*, 141 S. Ct. at 2119 (explaining that plaintiffs cannot bootstrap an injury from one statutory provision to challenge another). Moreover, a self-inflicted injury does not create Article III standing. *See Clapper*, 568 U.S. at 416. When a statute does not regulate or constrain a party, that party cannot manufacture standing "by claiming that they experienced a 'chilling effect.'" *Id.* at 419. To be sure, an organization can sometimes "establish injury in fact by showing that it had diverted significant resources," but that

diversion must be significant and traceable to the challenged conduct of the defendant. *NAACP v. City of Kyle*, 626 F.3d 233, 237–38 (5th Cir. 2010).

Plaintiffs failed to make this evidentiary showing to establish Article III standing based on either a significant diversion of resources or an alleged chilling effect. The Court concluded that Plaintiffs established organizational standing, in part, because they diverted resources from specific efforts, ECF 171 at 8, but that conclusion overlooks Plaintiffs' failure to provide evidence connecting that alleged diversion only to the challenged SB 1111 provisions. Plaintiffs blame that diversion on "SB 1111 *and all the other laws* that came into effect post-January"—including laws in other states. *See* Pls.' Summ. J. App., ECF 141 at App.093 (emphasis added); *id.* at App.094 ("[B]ecause there [were] the laws that were passed in the state of Texas *and others*, we actually had to shut down our Colorado program." (emphasis added)); *id.* at App.103–04 (blaming "SB 1111 and SB 1 *together*," "the issues and the residency requirements and advising students" as causing it to spend "over *maybe* $1 to $2 million (emphases added)); *see also id.* at App.114.

Just last year, the Supreme Court stated in no uncertain terms that a plaintiff may not establish standing to challenge one provision of an Act based on pocketbook injuries caused by "other provisions of [the same] Act"—let alone provisions of unrelated legislation in unrelated States. *California*, 141 S. Ct. at 2119. Yet the Court did not consider whether Plaintiffs proved that the challenged SB 1111 provisions themselves—as opposed to the numerous other election integrity laws passed in Texas and elsewhere—"concretely and perceptibly impaired" Plaintiffs' ability to carry out their mission. *NAACP v. City of Kyle*, 626 F.3d at 239. In any event, Plaintiffs routinely reallocate resources based on where they perceive their efforts will be most effective. It is speculative to assume that Plaintiffs would not have diverted their resources in the same fashion if "all other laws that came into effect post-January" were enacted except for the challenged SB 1111 provisions. Pls.' Summ. J. App., ECF 141 at App. 093.

Plaintiffs' evidence to prove standing based on an alleged chilling effect is even more deficient. It is blackletter law that conclusory allegations of a subjective chill are insufficient to establish standing absent a reasonable expectation of enforcement. *E.g.*, *Laird v. Tatum*, 408 U.S. 1, 11 (1972). Not only do Plaintiffs offer no evidence that they had an objective fear of criminal prosecution due to the challenged SB 1111 provisions, but Voto Latino also admitted it had no such fear. *See* Pls.' Summ. J. App., ECF 141 at App.091 (Q: You're not subject to criminal liability if you speak with college students, correct, about voter registration? A: That is correct."). The Court nevertheless concluded that Plaintiffs had a credible fear of prosecution, because "helping someone commit a crime is a crime." ECF 171 at 11 (quotation omitted). *First*, not all the provisions challenged in SB 1111 relate to criminal conduct. Section 15.051(a), for example, is directed at voter registrars and clarifies when the registrar must send the voter a written confirmation notice. There is no penalty attached to it, much less one that would chill Plaintiffs' speech. *Second*, Plaintiffs offered no evidence that they intend to knowingly provide false information to potential voters, much less that they intend to help potential voters commit a crime. In any event, the potential voters would not be committing a crime if they were confused about the laws' requirements and lacked the necessary *mens rea*. *See id.* (noting that "[a] person commits an offense if the person knowingly or intentionally: (1) votes or attempts to vote in an election in which the person knows the person is not eligible to vote" or if a person "with the intent to deceive . . . knowingly or intentionally makes a false statement or swears to the truth of a false statement . . . on a voter registration application" (quoting Tex. Elec. Code §§ 64.012, 276.012)).

Because Plaintiffs have no evidence that they objectively and reasonably fear enforcement of the challenged SB 1111 provisions, any chilling effect is a self-inflicted injury. And without a First Amendment harm, Plaintiffs' own constitutional rights are not implicated, which precludes them from "fall[ing] within the class of plaintiffs whom Congress has authorized to sue." *Lexmark Int'l, Inc. v.*

*Static Control Components, Inc.*, 572 U.S. 118, 128 (2014); *see Coon v. Ledbetter*, 780 F.2d 1158, 1160 (5th Cir. 1986).

        2.   *Plaintiffs failed to prove the P.O. Box Provision unconstitutionally burdens the right to vote.*

The Court correctly determined that the P.O. Box Provision advances the State's important regulatory interests, sufficient to justify a reasonable and nondiscriminatory burden. The Court, however, erred when it deemed the P.O. Box Provision unconstitutional as applied to "Texans who change their address." ECF 173 at 25. Plaintiffs had the burden of establishing that the P.O. Box Provision creates an impediment to such voters. Yet at no time did Plaintiffs provide evidence that voters who change their address had difficulty complying with the requirement. Plaintiffs instead noted that voters who failed to provide the required documentation would be added to the suspense list, ECF 140 at 127, which the Court assumed meant "be[ing] unable to vote." ECF 173 at 26. In focusing on this point, both Plaintiffs and the Court improperly conflated the burden of complying with the statute and the consequence of not complying: under the *Anderson-Burdick* balancing test, the former matters; the latter does not. *See Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 198 (2008) (lead opinion) (analyzing the burden on voters of obtaining identification rather than the consequence of attempting to vote without identification); *id.* at 209 (Scalia, J., concurring in the judgment) (same). Moreover, the Court appears to misapprehend how the suspense list operates. Voters on the suspense list retain their ability to vote by regular ballot, either in person or by mail, so long as the voter signs a statement of residence attesting that they satisfy the applicable residence requirements. *See, e.g.*, Tex. Elec. Code §§ 63.0011, 86.002. That statement of residence is provided to voters when they arrive at the polling location or when election officials transmit balloting materials to voters on the suspense list. *Id.* §§ 63.0011, 86.002. Plaintiffs did not offer any evidence that signing such a statement hindered or prevented voters who changed their address from cast their ballots, making relief inappropriate.

> *3. Plaintiffs failed to prove the Residence Provision unconstitutionally burdens the right to vote or right to free speech.*

Plaintiffs' facial challenge to the Residence Provision involves a question of first impression that required the Court to interpret a provision of the Election Code before the state courts had the chance to speak on the subject.[1] Intervenor Ken Paxton maintains that in such circumstances, the Court had an obligation to defer to the limiting construction proffered by the Secretary of State who is charged with "setting [§ 1.015(b)'s] machinery in motion" and "making the parts work efficiently and smoothly while they are yet untried and new." *Udall v. Tallman*, 380 U.S. 1, 16 (1965); s*ee also* ECF 154-1 at 14–16. Under that interpretation, § 1.015(b) only applies where a person claims a residence at a location where he or she is not domiciled in order to influence the outcome of a certain election. The Secretary's interpretation aligns with the circumstances and events leading up to SB1111's enactment and is a plausible reading of the text when read in its entirety. More to the point, the Secretary's interpretation sidesteps any constitutional tension that Plaintiffs allege in their Complaint since it targets narrow, non-expressive conduct, already illegal in Texas. The Court should have deferred to the Secretary's limiting construction as a matter of judicial restraint. *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008).

The Court instead chose to make an *Erie* guess and adopt a different reading of the statute. However, even under the interpretation opted by the Court, Plaintiffs do not meet their evidentiary burden that the provision unduly burdens either Plaintiffs' or voters' constitutional rights. *First*, the U.S. Supreme Court has explained that conduct is protected by the First Amendment when it contains sufficient "communicative elements," in that that it is intended to convey a particular message and that the message is likely to be understood. *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 388 (5th Cir. 2013) (citing *Texas v. Johnson*, 491 U.S. 397, 404 (1989)). The act of registering to vote where one lives

---

[1] Intervenors Torres and Pendley take no position regarding the interpretation of Texas Election Code § 1.015(b).

does not meet these characteristics, as it is required of all voters, and observers would not be able to apprehend the meaning behind the voter's message even assuming one was intended. *Second*, the Fifth Circuit has explained that speech associated with filling out a registration form belongs to voters not the Plaintiffs. *Id.* at 390. Plaintiffs' rights therefore are not implicated by the statute.

In addition, Plaintiffs never identified an actual chill to voters' conduct, such as registering to vote in a specific location. Indeed, as the Court correctly noted, despite months of discovery, Plaintiffs could not find a single voter who declined to establish or was hesitant to establish a residence because of § 1.015(b). As an alternative, Plaintiffs banked on the uncertainty some of the County Defendants expressed about the Residence Provision's application in certain contexts. However, the failure of some County Defendants to understand how the Residence Provision applies in every proposed scenario, without more, does not constitute a constitutional violation. Plaintiffs, at the very least, needed to introduce evidence that the uncertainty impeded Texans' ability to register to vote, which they did not. If anything, the record shows the contrary. The Defendant and Intervenor Counties, as voter registrars, are not investigative bodies. *See* App. to Paxton's Resp. to Pls. Mot. Summ. J., ECF 154-3 at App. 421 (Bexar Dep. 45:16–46:7). They do not inquire into the motive of voters when registering to vote but instead "accept [the] information provided by voters on the face of the form." *Id.* at App. 423 (Bexar Dep. 110:13–111:4). So long as the voter completes the application form, meets the eligibility requirements, and lists a residence situated in the county, Defendant and Intervenor Counties will accept their registration.

The record also shows that none of the counties involved in this case received any questions about § 1.015(b) or learned of any voters who sought to establish their residence for the purpose of influencing the outcome of a certain election. *See, e.g., id.* at App. 440 (Dallas Dep. 137:5–139:11). And many counties could not foresee an occasion where a voter would so inform them. The County Defendants therefore had little reason to consider how the Residence Provision would apply in the

11

hypothetical situations posited by Plaintiffs, such as a campaign worker or candidate running for office, prior to the County Defendants' depositions. This raises the question of whether the County Defendants' uncertainty stemmed from the novelty of the scenarios conceived by Plaintiffs—as opposed to the law itself. It also represents additional evidence that Plaintiffs' fears deviate from how the Residence Provision operates in practice: the County Defendants did not view it as their job to speculate what "influenc[ing] the outcome of a certain election" meant and indicated that they would refer any voters with questions about the provision to the Secretary of State's Office. *Id.* at App. 371–73 (Hidalgo Dep. 56:19–57:2, 59:7–16, 61:9–62:22). Plaintiffs needed more to have this Court set aside a democratically enacted state law.

Finally, the lack of state precedent in this area constitutes an independent ground for the Court to grant a stay while the appeal is pending. Not only does it indicate that Intervenor Paxton raised a serious legal question concerning the Legislature's intent, but federal jurisprudence cautions judicial restraint when courts are confronted with a facial challenge to state law because it "carries too much promise of 'premature interpretatio[n] of statutes.'" *Sabri v. United States*, 541 U.S. 600, 609 (2004) (quoting *United States v. Raines*, 362 U.S. 17, 22 (1960)). Texas Rule of Appellate Procedure 58.1 limits the certification of questions of state law to federal appellate courts, which precluded Intervenor Paxton (and this Court) from requesting guidance from the Texas Supreme Court prior to the appeal. The Parties now have the option of seeking a limiting construction from the Texas Supreme Court that would eliminate the exact constitutional concerns cited by this Court in its opinion. Granting a stay would allow state courts to have the opportunity to comment on § 1.015(b) and avoid "premature interpretations of statutes in areas where their constitutional application might be cloudy." *Wash. State Grange*, 552 U.S. at 450.

4. *Plaintiffs failed to prove the Temporary-Relocation Provision unconstitutionally burdens the right to vote.*

The Court wrongly concluded that the Temporary-Relocation Provision disenfranchises college students, and others similarly situated, because they have no residence at which they can register under Texas Election Code § 1.015(f). That provision prohibits persons from "designat[ing] a previous residence as a home and fixed place of habitation unless the persons inhabits the place at the time of designation and intends to remain." Tex. Elec. Code § 1.015(f). But the Court's conclusion rests on a misinterpretation of § 1.015 (and on how § 15.054 mitigates any potential burden or confusion). College students can register at their family home or at their place of college housing depending on their intent. *See* App. to Paxton Mot. Summ. J., ECF 138-3 at App. 062 (Ingram Dep. 145:7–146:19). If college students intend to make their college housing their home, then that becomes their residence—not unlike other young Texans who live in apartments with a fixed rental period. *See* Tex. Elec. Code § 1.015(a) (defining "residence" as "one's home and fixed place of habitation"). College students, however, sometimes live in college dormitories where their only address is a campus P.O. box, which could cause some confusion as to whether a campus address can be a residence under § 15.051(a). *See id.* § 15.051(a) ("If the registrar has reason to believe that a voter's current residence is . . . a commercial post office box . . . , the registrar shall deliver to the voter a written confirmation notice requesting confirmation of the voter's current residence."). But § 15.054(d)(2) and (f) make it clear that college students can use campus P.O. boxes as residential addresses.[2]

---

[2] To be sure, § 15.054 does not expressly allow off-campus college students to register using a campus P.O. box as the Court notes. ECF 171 at 31. But those off-campus students would necessarily have off-campus housing such as an apartment that they could use to register to vote—again, like any other voter who rents an apartment in which to live. Part-time students would presumably not live on-campus and would likewise have off-campus housing such as an apartment that they could use as a voting residence. At the very least, Plaintiffs introduced no evidence that part-time students lived on a college campus and were disenfranchised because they did not have a residential address they could use to register to vote (and were simultaneously unable to use the procedures available to other voters who lack fixed addresses).

In contrast, if college students intend for their family home to remain their home, then that is their "residence" under § 1.015(c), because "[a] person does not lose the person's residence by leaving the person's home to go to another place for temporary purposes only," such as for the purpose of attending college. Tex. Elec. Code § 1.015(c). In this scenario, college students' family home never ceased to be their residence and is their current residence under § 1.015(c), not their "previous residence" under § 1.015(f). The Court failed to give § 1.015(c) full effect when interpreting § 1.015(f) and misunderstood how § 15.054 helps ensure college students can use college housing as their residence if they do not consider their family home their fixed place of habitation. *See King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991) (following "the cardinal rule that a statute is to be read as a whole, since the meaning of statutory language, plain or not, depends on context" (quotations omitted)). Furthermore, the Court did not consider whether it needed to adopt an interpretation that would render § 1.015(f) unconstitutional. *See Parsons v. Bedford*, 28 U.S. (3 Pet.) 433, 448-49 (1830) ("No court ought, unless the terms of an act rendered it unavoidable, to give a construction to it which should involve a violation, however unintentional, of the constitution."); *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 873 (Tex. 2000) ("If possible, we interpret a statute in a manner that renders it constitutional.").

In sum, for these reasons and those more fully set out in Intervenors' prior briefing, the Court should have granted summary judgment for Intervenors and Defendants, not Plaintiffs. Regardless, Intervenors have, at the very least, presented a substantial case on the merits and raised serious legal questions that are important to the State, its citizens, and the integrity of elections, which weighs in favor of granting a stay pending appeal.

**B. Intervenors will be irreparably injured absent a stay.**

Enjoining election officials from carrying out validly enacted, constitutional laws governing elections imposes irreparable harm. *Cf. Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in

chambers). "It is beyond cavil that 'voting is of the most fundamental significance under our constitutional structure.'" *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) (quoting *Ill. Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979)). And it is one of the most fundamental obligations of the State to enact clear and uniform laws for voting to ensure "fair and honest" elections, to bring "order, rather than chaos, [to] the democratic process[]," and ultimately to allow the vote to be fully realized. *Storer v. Brown*, 415 U.S. 724, 730 (1974). The permanent injunction undermines those crucial interests as the election draws near, whereas "[a] temporary stay will, at a minimum, minimize confusion among voters and county registrars by making voter registration law uniform throughout the state in the crucial months leading up to the voter registration deadline." *Vote.Org v. Callanen*, 39 F.4th 297, 309 (5th Cir. 2022). If there is one principle that can be drawn from the Supreme Court's recent voting cases, it is this: "court changes of election laws close in time to the election are strongly disfavored." *Tex. All. for Retired Ams.*, 976 F.3d at 567. Enjoining the challenged provisions risks sowing confusion just as registration rates accelerate in the lead-up to the upcoming November election. The injunction therefore should be stayed pending appeal.

**C. The balance of equities weighs in favor of granting a stay.**

By contrast, a stay will not harm Plaintiffs. If the challenged SB 1111 provisions remain in place, Plaintiffs can continue their voter-registration efforts without fear of criminal liability, *see supra* p. 8, and they will have to expend resources to educate voters regardless of whether the provisions are enjoined or not. Notably, Plaintiffs could not identify a single member—or any Texas voter—who will be harmed by the challenged provisions, so whatever Plaintiffs' interests in having the provisions enjoined, those interests are far outweighed by the irreparable harm the permanent injunction inflicts on the public interest in election integrity and avoiding voter confusion. *See Veasey*, 870 F.3d at 391 (When the State seeks a stay pending appeal, "its interest and harm merge with that of the public." (citing *Nken*, 556 U.S. at 435)).

15

## CONCLUSION & RELIEF REQUESTED

Therefore, the Fifth Circuit should have the opportunity to review this Court's decision before Texas's law is permanently enjoined and the State—and corresponding public interest—is irreparably harmed. Intervenors respectfully request that the Court grant this motion by 5:00 p.m., August 12, 2022.

Dated: August 8, 2022

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation

WILLIAM T. THOMPSON
Deputy Chief, Special Litigation unit

/s/ *Kathleen T. Hunker*
**KATHLEEN T. HUNKER**
State Bar No. 24118415
kathleen.hunker@oag.texas.gov
Special Counsel

OFFICE OF THE ATTORNEY GENERAL
SPECIAL LITIGATION UNIT
P.O. Box 12548 (MC-009)Austin, Texas 78711-2548
Telephone (512) 463-2120
Facsimile: (512) 457-4410

*Counsel for Intervenor-Defendant Ken Paxton, in his official capacity as Attorney General of Texas*

/s/ *Autumn Hamit Patterson*
ROBERT HENNEKE
Texas Bar No. 24046058
rhenneke@texaspolicy.com
CHANCE WELDON
Texas Bar No. 24076767
cweldon@texaspolicy.com
AUTUMN HAMIT PATTERSON
Texas Bar No. 24092947
apatterson@texaspolicy.com
TEXAS PUBLIC POLICY FOUNDATION
901 Congress Avenue
Austin, Texas 78701
Telephone: (512) 472-2700
Facsimile: (512) 472-2728

*Counsel for Intervenor-Defendants Lupe C. Torres and Terrie Pendley*

## CERTIFICATE OF CONFERENCE

I hereby certify that I attempted to confer with Plaintiffs and Defendants via email on August 8, 2022. Of the parties that responded, Plaintiffs oppose the motion. Defendants Ramon and Longoria did not take a position on the motion. Defendant Wise stated that she would take a position once the motion was filed. I did not receive a response as to whether any of the remaining Defendants are opposed to the motion.

/s/ *Kathleen T. Hunker*
KATHLEEN T. HUNKER
Special Counsel

## CERTIFICATE OF SERVICE

I, Kathleen T. Hunker, hereby certify that on August 8, 2022, a true and correct copy of the within document was served on all parties via the Electronic Case Filing System.

/s/ *Kathleen T. Hunker*
KATHLEEN T. HUNKER
Special Counsel